## FRANCISCO GARZA v. THE STATE.

1. DYING DECLARATIONS. — See evidence held to satisfy the statutory requirements of the predicate for proof of dying declarations, which were made in a foreign language.

2. RECALL OF WITNESS. — The recall of a witness for the purpose of laying the predicate to impeach him is discretionary with the judge presiding at the trial, and his refusal to allow it will not be revised unless the record shows an abuse of his discretion, or that the recall was necessary to justice.

3. SPECIAL VENIRE — JURY. — The rulings in *Taylor* v. *The State, ante,* p. 169, on the mode of impaneling a jury from a special *venire,* referred to and reasserted.   The mode defined in *Horbach* v. *The State,* 43 Texas, 242, is still recognized as correct practice, and not affected by anything in the Jury Act of 1876.

4. MURDER — CHARGE OF THE COURT. — The original charge to the jury submitted only the law applicable to murder of the first degree. The jury returned a verdict convicting the accused in the second degree, but the verdict was informal because it failed expressly to acquit him of the first degree. Thereupon the court, of its own motion, delivered to the jury a written charge upon the second degree, and sent them back to amend their verdict. *Held*, that the remand of the jury to amend their verdict was correct; but the additional instructions to the jury, without their request or the consent of the accused, were without authority of law, and necessitates a reversal of the judgment.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. NOONAN.

The case made by the state was mainly dependent on the dying declarations of Luciano Cantu, the deceased, a Mexican for whose murder, on February 25, 1877, the appellant and one Juan Coy, also Mexicans, were jointly indicted. The appellant, Francisco Garza, was alone upon trial.

John F. Marnoch, for the state, testified that he knew Garza, the accused, and also Cantu, the deceased, who died at the house of one Torres, on the Helotes Creek, in the county of Bexar; that Cantu was shot, and made a dying declaration; witness, his brother George, Arthur Bleuker, and one Toepperwein, a justice of the peace, and several neighbors being present when it was made; Cantu made the declaration in the Spanish language; witness understood that language, and was sworn as an interpreter to interpret what the deceased said to the justice of the peace, and witness did correctly, to the best of his ability, interpret what the deceased said into the English from the Spanish language, and the same was reduced to writing, and was signed by witness, his brother George, and Bleuker, as witnesses. A paper being exhibited to the witness, he identified it as the declaration thus made and written down.

He further testified that Cantu was perfectly sane when he made the declaration on February 25, 1877; that he was conscious of approaching death, and expressed no hope of

recovery; that he made the declaration voluntarily, and without questions being asked him; that the difficulty took place on February 24, 1877, and he died the next day at the house of Torres.

George W. Marnoch and Arthur Bleuker, for the state, gave substantially the same account as that given by John F. Marnoch of the making of the dying declaration, but were more full and circumstantial in respect of Cantu's consciousness of approaching death and hopelessness of recovery. He was shot in the abdomen and arm. Bleuker had some knowledge of the Spanish language, and understood most of Cantu's declaration in that language, but not perfectly. Both of these witnesses also identified positively the paper exhibited as the declaration — which they said was made voluntarily by Cantu, and not in response to questions asked him. Bleuker stated that the declaration as written was translated to Cantu, and that some Mexicans, after it was made, asked Cantu some questions, the answers to which were not taken down.

The first two witnesses for the accused were Frank Huebner and Jacob Hoffman, who swore they knew the two Marnochs, and their reputation for truth in the neighborhood where they lived; and that it was bad. Neither knew anything derogatory to the reputation of the other state's witness, Bleuker. Hoffman said the accused had worked for him, and bore the character of a quiet, peaceable, and honest man.

Antonio Vargas, for the defense, testified that the interpreter, when he took down the statement, asked Cantu, " Who wounded you? " and that Cantu answered, " Juan Coy;" that Cantu was then asked, " Who else? " and answered, " Nobody else;" that the interpreter asked Cantu the same question twice over, who again said, " Juan Coy;" that Cantu then said that Francisco Garza came out with a knife and asked him if he wanted to fight, and that

he replied, "No ; don't you see I am wounded?" that the interpreter again asked Cantu, "Who wounded you?" and Cantu said, "Nobody else;" that Cantu first said that Francisco Garza was present when he was shot, but afterwards said he did not know whether Garza was present or not; that Cantu, after giving his statement, got up and walked out of doors for a moment. Witness, by order of the justice, arrested Garza, who said, "I surrender," but, after witness took him to where the justice was, he broke to run.

Tomas Luna, for the defense, testified that Cantu was very drunk the day he was shot; that Cantu, in making his statement, first said that Francisco Garza was present when he was shot; but that, when he was asked again, he said that Juan Coy wounded him, and that Francisco Garza might or might not have been there; and afterwards said that Garza stepped out and wanted to fight with him. This witness also said that Cantu got up from the bed, and, with the help of a little boy, went out of the house.

H. Gonzales, for the defense, testified that he and Cantu were coming down the road together, and Juan Coy came meeting them ; that Coy got down from his horse and shot Cantu ; that no one was present besides Cantu, Coy, and witness ; Francisco Garza was not there ; witness would have seen him if he had been. Cantu was drunk when he was shot. Witness had stated before the justice of the peace that as the gun fired his horse got frightened and ran off. Witness does not know whether any one came to where Cantu was, after his horse ran off and before his return about half an hour afterwards ; that, at noon of the day Cantu was shot, there was a difficulty between Cantu, Juan Coy, and Francisco Garza. The witness having stated that Francisco Garza was not present when Cantu was shot, the question was put to him how he could tell that, when he was absent during the time his horse ran

off; to which he replied that he saw the parties all the time, and was looking at them all the time. This concluded the evidence for the defense.

The state offered the paper identified as the dying declaration of Cantu; to which four objections were interposed by the defense: First, that the evidence did not show that Cantu was conscious of approaching death, and hopeless of recovery; second, that the evidence shows that the paper does not embrace all the declarations made by Cantu at the time; third, that the declarations were made in the Spanish language, while the paper offered is in English; and, fourth, that two of the witnesses had testified that the declarations were made in answer to an interrogatory by Marnoch. The court overruled the objections, and exceptions to the ruling were duly reserved by the defense.

The state then introduced the document, which is as follows:

"Depositions of Luciano Cantu, taken before me, the undersigned, this 25th day of February, 1877, at Helotes Creek, in the house of José A. Torres, in the county of Bexar; he, the said Luciano Cantu, being expected to die, this deposition was taken.

"'I was coming down the Bandera Road, in Bexar County, with Henebebo Gonzales, yesterday, at about three o'clock, P. M. I was shot by Juan Coy with a Winchester rifle, and, after that, Francisco Garza came at me with a knife and asked me if I wanted to fight with him also. I told him that I could not protect myself, for I was shot. They, Juan Coy and Francisco Garza, then left me and went off. I had no arms of any kind with me at that time. I had no words of quarrel with said parties, but they rushed out from the side of the road, and Juan Coy fired the shot of which I am wounded. I was, at the time, riding a horse, and after I received the shot I leant against a brush, which kept me from falling. Juan was on foot when he fired, but

afterwards he mounted his horse, which was close by; and both Juan Coy and Francisco Garza rode in a gallop toward their camp, which was in the direction of San Antonio, on the Helotes Creek.

"'Helotes Creek, this 25th day of February, 1877.

                           his
            "' LUCIANO ✕ CANTU.'
                          mark.

"Sworn to and subscribed before me this 25th day of February, 1877.

                "H. W. TOEPPERWEIN,
                  "J. P., B. C. Pr. No. 2."

"We, the undersigned, were present when Luciano Cantu made and swore to the above statements, and was in the full power of his mental powers.

                    "J. F. MARNOCH.
                    "G. W. MARNOCH.
                    "A. BLEUKER."

This closed the evidence in the cause. The opinion of this court discloses the other features of the case relevant to the rulings made. What became of Juan Coy is not shown by the record.

No brief for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J. Two parties, one Juan Coy and Francisco Garza, this appellant, were jointly indicted for the murder of one Luciano Cantu. This appellant was alone placed upon trial, and was found guilty of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years. Four bills of exception were saved; twelve grounds are set forth in the motion for a new trial, and nine errors are assigned. We

propose only to notice the points presented in the bills of exceptions.

The first was with reference to the admission in evidence of the papers purporting to be the dying declarations of Luciano Cantu, the murdered man. We think the evidence came fully up to the rules prescribed by the statute. Pasc. Dig., art. 3125. See, also, *Lister* v. *The State*, 1 Texas Ct. App. 739.

The question presented in the second bill of exceptions is one which has been settled by this court in the case of *Treadway* v. *The State*, 1 Texas Ct. App. 668. The recall of a witness for the purpose of laying a predicate to impeach him is a matter confided to the discretion of the judge presiding at the trial, and his action upon it will not be revised by this court when the record fails to show that his recall was necessary to a due administration of justice (Pasc. Dig., art. 3046), or unless it be made to appear that the discretion has been abused to defeat the ends of justice. *Kemp* v. *The State*, 38 Texas, 111; *Roach* v. *The State*, 41 Texas, 262.

The fourth bill of exceptions, which we will next notice, was to the ruling of the court in requiring the defendant to pass upon each juror of the special *venire* separately, while the defendant claimed the right to have a list of the jury, prepared by the clerk and furnished to his counsel, from which he might first strike the names of those whom he challenged. This identical objection was presented in the case of *Taylor* v. *The State*, decided at the present term, and the ruling of the court below was held to be correct. *Ante*, p. 169. It was further held in that case that the rules provided for the selection of juries, as prescribed in section 22, Acts of Fifteenth Legislature, page 82, applied to trials other than capital felonies; and that section 23, with reference to special *venires*, not being in conflict with and not having

provided a different mode or manner, the rule as laid down by our Supreme Court in the case of *Horbach* v. *The State,* 43 Texas, 242, would be still recognized as the correct practice.

But the most serious error complained of, and the one · which will render a reversal of the judgment in this case necessary, is that presented by the third bill of exceptions. We will state the point by stating the facts connected with it, without transcribing the bill of exceptions. The original charge of the court to the jury submitted the law only as applicable to murder of the first degree. After having considered of their findings, the jury returned into court a verdict finding the defendant guilty of murder in the second degree, and assessing the punishment at imprisonment in the penitentiary for a period of twenty years. This verdict was informal, in that it did not expressly acquit the defendant of murder in the first degree. Before sending the jury back to correct this informality, and without the jury's having requested any additional instructions, the court prepared and reduced to writing (which he read and gave to them) a charge upon the law and punishment of murder in the second degree, and then sent them back, under this second charge, to correct the informality of the verdict. Upon which second retirement the verdict in this case was found and returned, and judgment rendered thereon.

Our statute provides that an informal verdict may be corrected with consent of the jury, and, under direction of the court, be reduced to proper form. Pasc. Dig., art. 3092. We know, however, of no authority of law which gave the court the right to give the jury a new charge, or an additional one, upon another phase of the law than that submitted in the original charge. The statute provides the only case in which a court can furnish additional instructions to a jury after their retirement. It reads: " The jury, after having retired, may ask further instructions of the judge, touching

matter of law, which shall be given them in writing, but no charge shall be given except upon the particular point on which it was asked.'' Pasc. Dig., art. 3079.

It is further provided, in the act concerning proceedings in the District Court, that " all charges and instructions, whether given by the judge of his own accord, or upon the request of counsel or parties, may be carried from the bar by the jury, in their retirement, and no judge shall in any case make any further charge, unless on application of the jury, or a party or his counsel.'' Pasc, Dig., art. 1464. In the case of *Goss* v. *The State*, 40 Texas, 520, it was held to be error for the district judge, in a felony case, after the jury had retired, to alter his charge without the consent of the defendant, and for such error alóne the case was reversed. See, also, the case of *Taylor* v. *The State*, 42 Texas, 504.

For this error committed by the court in submitting a new charge to the jury after their retirement, and without being requested to do so, the judgment of the lower court must be reversed and the cause remanded.

*Reversed and remanded.*